# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT


No. 24-13932


MOUATASEM ZIENNI, Plaintiff-Appellant


v.


MERCEDES-BENZ U.S. INTERNATIONAL, INC. , Defendant-Appellee


ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ALABAMA

DISTRICT COURT CIVIL ACTION NO. 7:23-cv-1002-LSC

**APPELLANT'S OPENING BRIEF**

COUNSEL FOR APPELLANT

Artur Davis
HKM Employment Attorneys LLP
2012 3rd Avenue North, Suite 212
Birmingham AL 35023
205-881-0935
adavis@hkm.com


Date: February 12, 2025

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1, Fed. R. App. Pr. and Eleventh Rule 26.1-1, the undersigned counsel of record hereby certifies the following is a complete list of the judges, attorneys, persons, firms, partnerships, corporations, and any other identifiable legal entities related to a party that has an interest in this case.

Joseph Barnell, attorney for Defendant/Appellee

Burr & Forman

The Honorable Scott L. Coogler, United States District Judge

Artur Davis, attorney for Plaintiff/Appellant

HKM Employment Attorneys LLP

Mercedes-Benz U.S. International, Inc.., Defendant/Appellee

Michael Lucas, attorney for Defendant/Appellee

Mouatasem Zienni, Plaintiff/Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because this case involves an important doctrinal issue regarding the impact of *Muldrow v. City of St. Louis* on this circuit's analysis of denied religious accommodations. Oral argument will assist in resolving this question.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT**     2

**STATEMENT REGARDING ORAL ARGUMENT**     3

**TABLE OF AUTHORITIES**     5

**STATEMENT OF JURISDICTION**     7

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**     8

**STATEMENT OF THE CASE**     9

    Course of the Proceedings and Disposition Below     9

    Statement of Facts     9

    Procedural History     13

**SUMMARY OF THE ARGUMENT**     14

**STANDARD OF REVIEW**     16

**ARGUMENT**     17

    I.   The district court erred in determining that Zienni did not establish a prima facie case     17

       1.   Title VII's religious accommodations clause     17

       2.   Whether Zienni was subjected to an adverse action     18

    II. MBUSI failed to establish that there is no triable issue as to the merits of Zienni's accommodation claim     24

    1.   Whether MBUSI offered Zienni a reasonable accommodation     25

    2.   Whether MBUSI demonstrated an undue hardship     27

**CONCLUSION**     30

**CERTIFICATE OF SERVICE**     31

**CERTIFICATE OF COMPLIANCE**     32

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ansonia Board of Education v. Philbrook*,
479 U.S. 60 (1986) ................................................................. 25

*Bailey v. Metro Ambulance Services, Inc.*,
992 F.3d 1265 (11th Cir. 2021) ........................................ 17, 18, 26

*Caudill v. North Carolina Symphony, Inc.*,
2024 WL 4318985 (W.D. N.C. Sept. 26, 2024) ......................... 23

*Cole v. Group Health Plan, Inc.*,
105 F.4th 1110 (10th Cir. 2024) .............................................. 23

*DePerez v. AT&T Co.*,
139 F.3d 1368 (11th Cir. 1998) .............................................. 24

*Desmarais v. Granholm*,
2024 WL 3844801 (D. D.C.  Aug. 16, 2024) ............................. 23

*Durham v. Rural/Metro Corp.*,
955 F.3d 1279 (11th Cir. 2020) .............................................. 25

*Groff v. DeJoy*,
600 U.S. 447 (2023) ................................................ 16, 27, 28, 30

*Monaghan v. Worldpay U.S. Inc.*,
 955 F.3d 855 (11th Cir. 2020) .............................................. 18

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) .............................. 3, 14, 15, 19, 21, 22, 23, 24

*Patterson v. Walgreen Co.*,
727 Fed. Appx. 581 (11th Cir. 2018) ................................... 25, 26

*Staples v. School Board of Broward County, Fla.*,
2024 WL 3263357 (11th Cir. July 2, 2024) ............................ 18, 19

*Strickland v. Norfolk Southern Railway Co.*,
692 F.3d 1151 (11th Cir. 2012) .............................................. 17

*TransWorld Airlines Inc. Hardison*,
432 U.S. 63 (1977) ............................................................... 27

*Webb-Edwards v. Orange County Sheriff's Office*,
525 F.3d 1013 (11th Cir. 2008) .............................................. 19

Statutes

28 U.S.C.A. § 41 ................................................................... 7
28 U.S.C.A. § 1291 ............................................................... 7
42 U.S.C.A. 2000e-2(a)(1) ..................................................... 18

42 U.S.C.A. § 2000e(j)                                          9, 17
42 U.S.C.A. § 12112(b)(5)(A)                                    30

Rules

11th Cir. R. 32-3                                               32
Fed. R. Civ. Pr. 12(b)(6)                                      19
Fed. R. Civ. Pr. 56(a)                                         16
FRAP 32(a)(5)(A)                                               32
FRAP 32(a)(7)(B)(1)                                            32
FRAP 32(f)                                                     32
Rule 26.1, Fed. R. App                                          2
Rule 56 of the Federal Rules of Civil Procedure                16

**STATEMENT OF JURISDICTION**

**<u>Subject matter jurisdiction</u>**

This appeal was timely filed under Fed. R. App. Pr. Rule 4(a)(1). The Appellant asserts jurisdiction based on 28 U.S.C.A. § 1291. Jurisdiction lies in this court under 28 U.S.C.A. § 41.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the district court properly applied the holding in *Muldrow v. City of St. Louis* to its analysis of whether the denial of Appellant's requested religious accommodation constituted an adverse action.

2.      Whether the district court erred in finding that Appellant did not suffer an adverse action when Appellee denied his request for religious accommodations.

3.      Whether Appellee met its burden of establishing that it offered Appellant a reasonable accommodation or that Appellant's requested accommodations would have imposed an undue hardship on its business operations.

<h1 style="text-align:center">STATEMENT OF THE CASE</h1>

## Course of the proceedings and disposition below

Mouatasem Zienni ("Zienni"), who is Muslim, filed an employment discrimination lawsuit against his former employer Mercedes-Benz U.S. International, Inc. ("MBUSI") in the United States District Court for the Northern District of Alabama on July 31, 2023 (Doc. 1). Zienni alleged that the company discriminated against him by denying his request for religious accommodations to permit him to observe periodic prayer rituals dictated by his faith. Zienni's claim arose under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e(j)

On May 15, 2024, MBUSI moved for summary judgment. (Doc. 20). The district judge granted the motion on November 19, 2024, and entered final judgment in this matter on the same date. (Docs. 32, 33). Zienni filed a timely notice of appeal on December 2, 2024. (Doc. 35).

## Statement of the Facts

From June 2022 to January 2023, Mouatasem Zienni worked a ten hour day shift on the assembly production line at the MBUSI plant in Vance, Alabama from 6:15 AM to 4:45 PM. (Doc. 22-1, Deposition of Mouatasem Zienni ("Zienni depo.") at 58-59; Doc. 22-2, Declaration of Edith Palmer ("Palmer dec.") at ¶3). Zienni, who is of Lebanese origin, is a practicing Muslim. (Zienni depo. at 17). The tenets of his faith require him to conduct prayer rituals at specific intervals five

times a day, corresponding with in alignment of the sun: each observance is a ten to fifteen minute exercise that in addition to reciting portions of the Koran, consists of washing hands, removing shoes, and bending on one's knees. (*Id.* at 31-32, 36-41; 152-53). During Zienni's approximate seven months at MBUSI, his prayer times typically fell twice during the course of his work day. (*Id.* at 146-47).

During Zienni's approximate seven months of employment, his team leader Tristan Stonski permitted him to leave his shift to pray while Stonski or a "floater" filled his place on the assembly line until he returned. (*Id.* at 73-75). There is no evidence in the record that any of these prayer breaks caused a disruption on the line or in any way disrupted Zienni's shift. (*Id.* at 148-49; Doc. 22-3, Deposition of David Olive ("Olive depo.") at 57).

In the fall of 2022, however, Zienni's Group Leader Rolanda Davis noticed him taking a prayer break and informed him that he could not leave his station to pray during production. (Zienni depo. at 76). After Davis witnessed Zienni praying a second time that fall, she and her manager Edith Palmer elevated the issue to the human resources ("HR") department. (*Id.* at 76, 85-87; Palmer dec. at ¶¶33-34). Palmer and Davis informed Zienni that he could not continue taking prayer breaks during shifts and would need to confine his prayers to scheduled breaks MBUSI allotted to employees during their shifts. (*Id.* at ¶34; Zienni depo. at 85, 101-02). That option was unpalatable to Zienni because his faith "frowns on" missing prayer

breaks even if they are "made up" at another time. (*Id.* at 51-52). Davis offered Zienni the option of shifting to an evening shift, but Zienni declined the transfer because his prayer schedule would still conflict with parts of the shift: for example, the fourth and fifth prayers of the day fall during evening times. (*Id.* at 33-34; 127).

Based on testimony from MBUSI's senior HR manager, David Olive, the HR department's evaluation of whether Zienni should receive a religious accommodation to take prayer breaks did not consider a variety of factors regarding the actual effects of the breaks on the operation of his shift. For example, the HR team never actually discussed the impact of his breaks on the shift and never received any information that Zienni's extra breaks were in any manner disruptive. (Olive depo. at 57). HR never weighed whether there were any actual economic costs to the production operation of Zienni taking an extra two breaks each day. (*Id.* at 60). In fact, Olive admitted that he and his team did not even gather information about how long the breaks lasted. (*Id.* at 56).

Zienni, with his team leader's permission, still continued to take his prayer breaks, taking care to avoid Davis by praying in bathrooms in a different location or going outside the facility. (Zienni depo. at 73-75). Zienni testified that the experience of having to sneak to avoid getting caught praying left him depressed and anxious. (*Id.* at 109-110). And while Zienni was never disciplined, Davis testified in deposition that if she had seen him praying a third time, she would have

reported the episode to HR, and that insubordination and the failure to follow company directives would have been taken seriously at MBUSI. (Doc. 22-4, Deposition of Rolanda Davis ("Davis depo.") at 76-77; 116-117). HR manager Olive testified that if it had been known to management that Zienni was leaving his shift to take prayer breaks, he could have been "subject to corrective action" and that disciplinary consequences up to and including termination could have resulted. (Olive depo. at 65-67).

Davis acknowledged that assembly line workers at MBUSI take unscheduled breaks for medical reasons like needing to go to the bathroom more frequently for prostate issues and Olive testified that in his view, medical accommodations are entitled to more deference than religious accommodations. (Davis depo. at 103-104; Olive depo. at 44-45). As a result, MBUSI never compared the frequency and effect of Zienni's prayer breaks with unscheduled breaks employees took for other reasons. (*Id*. at 58). Olive also said that the HR department never sought an opinion from the legal department about whether Zienni's accommodation should be approved. (*Id*. at 46-47).

Zienni filed a charge of religious discrimination with the EEOC on October 17, 2022. (Doc. 1-1). He chose to resign in January 2023 because he believed that as a result of backlash from the charge, he could be reassigned to work in a

particularly onerous and demanding section of the plant in an effort to get him to quit. (Zienni depo. at 142-44).

**Procedural history**

Zienni sued MBUSI on July 31, 2023. (Doc. 1). Following the close of discovery, MBUSI moved for summary judgment arguing, first, that the record did not establish that the tenets of Zienni's Islamic faith required him to take breaks at the intervals he identified since Zienni testified that he interpreted his faith to permit missed prayer observances to be "made up" at the first available opportunity. (Doc. 21, Defendant's Memorandum Brief in Support of its Motion for Summary Judgment ("Defendant's SJ Brief") at 20-21). MBUSI further argued that because Zienni was never disciplined, he did not establish that he was subjected to an adverse action. (*Id*. at 21-22). Finally, assuming *arguendo* a prima facie case, MBUSI contended that it offered Zienni a reasonable accommodation by enabling him to conduct his prayer rituals during regularly scheduled breaks and that to grant Zienni's requested accommodations would have worked an undue hardship on the company. (*Id*. at 22-27). Without citing any empirical or testimonial evidence, MBUSI alleged in its briefing that extra breaks "would cause a severe detriment". (*Id*. at 27).

The district court granted summary judgment and dismissed Zienni's case.[1] (Doc 33). While the court rejected MBUSI's contention that the denial of extra prayer breaks for Zienni did not interfere with the teachings of his faith, the court concluded that Zienni never suffered an adverse action even under the more lenient test for adversity adopted by the Supreme Court in April 2024 in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). (Doc. 32, Memorandum Opinion ("Memorandum Op.") at 12-18). The court did not reach the issue of whether MBUSI had established that it offered Zienni a reasonable accommodation or that accommodating Zienni would create an undue hardship. In this appeal, Zienni challenges the grant of summary judgment as to his Title VII religious discrimination claim.

## SUMMARY OF THE ARGUMENT

As the Supreme Court found in *Muldrow*, various appellate jurisdictions including this circuit had applied too demanding a standard in determining whether an employee sustained an adverse action under Title VII. *Muldrow* explicitly abrogated any rule of interpretation that demanded an "economic or tangible" loss, or alternatively, any heightened bar that inquired into whether the alleged injury was "significant", "serious", or "substantial", such as this circuit's preexisting

---

[1] Zienni also asserted a retaliatory mistreatment claim and summary judgment was granted as to that claim as well. (Memorandum Op. at 18-24). Zienni does not appeal that portion of the District Court's order.

standard that to be adverse, a challenged employment action must effect a "serious and material change" in the terms and conditions of employment. *Id.* at 353 n.1, 355. Instead, litigants claiming Title VII discrimination need only demonstrate that they incurred "some harm" or "some disadvantageous change respecting an identifiable term or condition of employment." *Id.* at 354-355.

Against that backdrop, this appeal turns on whether a denial of a religious accommodation without subsequent disciplinary ramifications constitutes an adverse action post-*Muldrow*. The district court mistakenly read *Muldrow* to still require some showing of concrete not putative injury, a distinction that *Muldrow* at no point draws. It is also a construction that ignores two realities in the record: had Zienni been caught praying outside a regular work break, he faced the specter of discipline up to termination; and the tension of avoiding those consequences caused him anxiety and distress, which is a compensable Title VII damage.

The holding in this case applied across the circuit would leave the religious accommodations framework in Title VII in a weakened state. To cite one risk, a company could compel displays on company uniforms of endorsements of public policies that an employee's faith compelled her to reject on the grounds that a compulsory message creates no injury. Or imagine this scenario: the district court's reasoning would permit an employee whose transfer narrowed their scope of responsibility in a manner not to their liking to have access to federal court; yet a

worker who was ordered to violate the obligations of their religious doctrine would lack the same remedy. Such an analytical framework would privilege intangible harms that don't involve religious mores or values over similar injuries that do touch faith.

As to the substance of Zienni's discrimination claim, the Supreme Court's expansion of the Title VII rights of employees seeking religious accommodations in *Groff v. DeJoy*, 600 U.S. 447, 470 (2023) demands a showing that a company either offered an accommodation that would have eliminated the conflict between the religious practice at issue and work, or establish that the sought accommodation would impose "substantial increased costs" that establish an undue hardship. Rather than remand, this court should recognize from the record that MBUSI failed on both fronts. As to the "undue hardship" test, MBUSI did not articulate any evidence in support of its rationale for rejecting Zienni's accommodation beyond conclusory, non-testimonial assertions. This court should find that MBUSI failed to meet its burden under *Groff* and remand this matter for jury trial.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56(a).  On

a *de novo* summary judgment review, this court must "view[] all evidence and draw[] all reasonable inferences in favor of the non-moving party." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

## ARGUMENT

### I.  The district court erred in determining that Zienni did not establish a prima facie case.

#### 1.  Title VII's religious accommodations clause

Title VII prohibits discrimination based on religion. 42 U.S.C.A. 2000e-2(a)(1). A litigant may challenge under Title VII any failure to accommodate their "religious observance or practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate to an employee's or prospective employee's religious observation or practice without undue hardship on the conduct of the employer's business." 42 U.S.C.A. § 2000e(j).

To assert a successful religious discrimination claim based on a failure to accommodate theory, a plaintiff must first establish a prima facie case through evidence that (1) a work rule conflicted with a "sincere and bond fide" religious beliefs; (2) that the employer took an adverse action against the employee based on his need for accommodation. *Bailey v. Metro Ambulance Services, Inc*., 992 F.3d 1265, 1275 (11th Cir. 2021). Should a plaintiff satisfy the prima facie showing, the burden transfers to the employer to show that it offered a reasonable

accommodation or that the employee's proposed accommodation would render an undue hardship on the employer's business. *Id*. at 1275.

### 2. <u>Whether Zienni was subjected to an adverse action</u>

A failure to accommodate theory of religious discrimination does not require that the employee experience termination or discipline based on the denial of the accommodation in order to establish an adverse action. *See Staples v. School Board of Broward County, Fla.*, 2024 WL 3263357 at *4 (11th Cir. July 2, 2024); *Bailey*, 992 F.3d at 1275. As this court has noted,  religious accommodation claims arise out of the disparate treatment provision of Title VII; therefore, religious discrimination litigants who assert denied accommodations, like their counterparts alleging race or sex based disparate treatment, may base their theory of liability on any employment practice that "discriminates…with respect to…terms, conditions, or privileges of employment". *Staples,* 2024 WL 3263357 at *4 (quoting 42 U.S.C.A. §2000e-2(a)(1).

Still, prior to *Muldrow v. City of St. Louis*, this circuit construed the adverse action test to reach claims beyond termination only if they reached a threshold level of impact, defined in various opinions as "things that are similarly significant" to "terminations, demotions, suspensions without pay, and pay raises or cuts", *Monaghan v. Worldpay U.S. Inc*.; 955 F.3d 855, 860 (11th Cir. 2020); or as events that caused a "serious and material change" in the terms and conditions

of employment, *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1033 (11th Cir. 2008).

But *Muldrow* abrogated any requirement that a discrimination plaintiff prove harm that is "significant…[o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow*, 601 U.S. at 355. Instead, a plaintiff must demonstrate "some harm respecting an identifiable term or condition of employment"; meaning that the putative injury must have left the worker "worse off, but need not have left [him] significantly so." *Id*. at 355, 359.

To date, this court has applied *Muldrow* one time to a Title VII religious accommodation theory. In *Staples v. School Board of Broward County*, in a motion to dismiss analysis under Fed. R. Civ. Pr. 12(b)(6), the panel held that an allegation that a Seventh Day Adventist was denied an accommodation and required to exhaust personal leave to take off his Sabbath on Saturdays articulated a plausible adverse action. *Staples* 2024 WL 3263357 at *4.

At the district court, Zienni described his denied accommodation to take extra breaks to observe his prayer rituals as an adverse action and identified two theories of "some harm" (Doc. 27, Plaintiff's Memorandum Brief in Opposition to Summary Judgment ("Plaintiff's SJ Brief") at 15: the fact that MBUSI's senior HR manager testified that Zienni faced the threat of discipline up to and including

termination if he were caught praying outside a regularly scheduled break, and Zienni's testimony that he experienced depression and anxiety from the denial of his request. (Davis depo. at 76-77; 116-17; Olive depo. at 65-67; Zienni depo. at 109-110). To the district court, neither of those consequences established a viable adverse action, for three reasons: first, that whether an employee could leave the assembly line for a break did not implicate a "term or condition" of employment at all (Memorandum Op. at 15); second, that Zienni suffered no actual consequences from the denial of his accommodation and continued to take prayer breaks with his team leader's permission (*Id*. at 16); and last, that the possibility of punitive consequences does not constitute any manner of injury or harm. (*Id*. at 16-17). All of these conclusions misapply *Muldrow* in different ways.

Taking the "terms and conditions" rationale first, the district court reasons that "nothing in the record suggests that the ability to leave the line to pray was ever a 'term' of [Zienni's] employment; rather the evidence indicates that Zienni's system of signaling someone to cover his station at prayer time was simply an arrangement with his coworkers". (*Id*. at 15). But whether the effect of Zienni's proposed accommodation would have been to preserve a concession granted by a supervisor or to impose a new rule from scratch is irrelevant; the operative "term and condition" is the normal schedule and work hours assigned to Zienni, which he sought to modify.

The district court's second and third reasons for finding no adverse action merge together and share the same logic: they read *Muldrow* to require a tangible concrete injury that has already materialized, not a prospect of harm in the future. But the facts in *Muldrow* weigh against that interpretation. The police officer in *Muldrow* complained about her transfer from her department's Specialized Intelligence Division participating in sensitive investigations and overseeing citywide gang and gun units to an assignment supervising a routine patrol division; and the loss of perks like a set work schedule, an unmarked vehicle that she could drive home, and membership in an FBI task force. *Muldrow*, 601 U.S. at 351. Given that Officer Muldrow's pay and rank did not change, her theory of injury was that the loss of status within the police bureaucracy disadvantaged her and left her worse off, but for reasons rooted in esteem and job satisfaction.

Zienni's denied accommodation, in turn, reflects the difference between observing his faith with the endorsement of his employer and furtively praying in a manner to escape detection as if he were engaged in an illicit or embarrassing habit. It would compromise Title VII's intent to equalize religious discrimination with race and sex discrimination if a Title VII sex plaintiff can build a theory of harm around the intangible consequence of lost status while a devout religious practitioner cannot rely on internalized feelings of loss or coercion.

Moreover, a part of Zienni's theory is that he was left worse off in that the denial of his accommodations put him at risk of detrimental consequences including eventually being fired. While the district court treats that risk as too speculative, it is on its face a less advantageous position than an employee whose accommodation was granted, even if the scope of the disadvantage is subjective. As *Muldrow* notes, "[t]here is nothing in [Title VII's disparate treatment] provision to distinguish….between [actions] causing significant disadvantages and [actions] causing not-so-significant ones." *Id.*, 601 U.S. at 355. And with Zienni, the denied accommodation constituted an act of disparate treatment in another sense: Zienni's team leader Rolanda Davis testified that MBUSI does permit employees to take extra breaks for medical reasons. (Davis depo. at 103-104). As a result, MBUSI's denial of Ziennis's extra breaks for prayer purposes reflected an approach that relegated religious based accommodations to a less privileged status than claims arising out of another statutory scheme, the Americans with Disabilities Act. The de-prioritization of religious exemptions is another infliction of some level of injury that leaves an employee of faith at a disadvantage in comparison with his peers.

The district court attached no weight to the prospect that the denial of his accommodation conveyed a message to Zienni that his religious observance did not merit recognition by his employer. If that harm seems to lack substance, imagine a

few examples that mirror Zienni's experience. If in late 2023 a business wished to show solidarity with the Palestinian perspective over Israel's military efforts in the West Bank and Gaza, it might well have ordered employees to post on their work email account the anthem, "from the river to the sea", with a insignia of the Palestinian flag. Another company in the current policy climate might wish to declare support for the protection of transgender rights by directing employees to wear Pride logos. In each respective example, a Jew or evangelical Christian employee might well bring a Title VII religion claim based on their compulsory promotion of ideology that clashes with their faith. By the district court's logic, a claim of that sort, without more in the way of injury, would be a non-starter. It is far from clear that this court or the Supreme Court would agree.

To be sure, in the aftermath of *Muldrow*, various courts have recognized that the failure to grant an accommodation in its own right qualifies as an adverse action. *See, e.g., Cole v. Group Health Plan, Inc*., 105 F.4th 1110, 1114 (10th Cir. 2024); *Caudill v. North Carolina Symphony, Inc*., 2024 WL 4318985 at *10-11 (W.D. N.C. Sept. 26, 2024); *Desmarais v. Granholm*, 2024 WL 3844801 at *5 (D. D.C. Aug. 16, 2024). But given the evidence Zienni presented of various theories of injury even in the absence of discipline, this court need not address whether the

denial of a religious accommodation absent any additional evidence of harm is actionable.[2]

Under the guidance in *Muldrow*, Zienni incurred an adverse action, and therefore established a prima facie of liability under Title VII's religious discrimination clause.

## II.      MBUSI failed to establish that there is no triable issue as to the merits of Zienni's accommodation claim.

Because it determined that Zienni did not satisfy the standard for a prima facie case of liability, the district court did not evaluate whether MBUSI presented evidence sufficient to merit summary judgment as to the substance of Zienni's accommodation claim. But the parties briefed the issue in detail in their Rule 56 submissions and the record is adequately developed on this front.[3] Remand would only serve to create delay and a potential second round of appellate briefing. *See DePerez v. AT&T Co.*, 139 F.3d 1368, 1373 n.5 (11th Cir. 1998) (whether an appellate court will consider issues unreached by the district court is a "pragmatic" consideration, and reaching undecided issues is "unquestionably" within the

---

[2] The most likely scenarios where a denied accommodation did not inflict injury are ones in which an employer declined to recognize an accommodation but simultaneously announced it would not enforce the decision or if the record established a willful pattern of non-enforcement. Given the testimony of HR manager Olive, neither scenario applies to Zienni.

[3] In fact, MBUSI's briefing was considerably more extensive on the post-prima facie case analysis than on the adverse action inquiry. (*Compare* Defendant's SJ Brief at 23-27 *with* 21-22).

appellate court's discretion). *Cf. Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1287 (11th Cir. 2020) (declining to reach the merits of a post-prima facie analysis when the appellate briefing "did not focus" on the ultimate liability issue).

### 1. __Whether MBUSI offered Zienni a reasonable accommodation__

MBUSI contested Zienni's accommodation claim, first, with evidence that it offered him a reasonable accommodation, which is "one that eliminates the conflict between employment requirements and religious practices." *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 68 (1986). While an employer need not "guarantee" the elimination of the conflict, it must take steps that would effectively "enhance the likelihood of avoiding it". *Patterson v. Walgreen Co.*, 727 Fed. Appx. 581, 587 (11th Cir. 2018).

For example, in *Patterson v. Walgreen*,  this court evaluated the accommodations claim of a customer service training instructor who was a Jehovah's witness seeking to avoid being assigned work hours on his Sabbath, sundown Friday to sundown Saturday. *Id*. at 583. The panel recognized as reasonable the employer's offer that the instructor could swap shifts with coworkers who willingly agreed to the switch; as well as an alternative proposal that if the instructor struggled to arrange schedule swaps because of competing weekend obligations for other instructors, he could transfer to a customer service role where there would be a "larger of employees" available to replace him on the

Friday night to Saturday night schedule. *Id*. at 587. This court rejected the plaintiff's argument that the transfer would be a demotion, absent evidence of a change in pay, or that the offered accommodation did not ensure the availability of a fill-in and might expose the plaintiff to consequences if he could not find a substitute. *Id*.

In contrast to *Patterson*, MBUSI's first two counters to Zienni left the conflict between his religious observance and his works schedule squarely in place; permission to pray during regular breaks would have compelled Zienni to disregard the teachings of his faith that the prayer ritual must be observed at specific times. (Zienni depo. at 51-53).The alternative of shifting to an evening shift fared no better, Zienni testified, as the prayer schedule still would have demanded extra breaks, during early evening summer and early morning points in the fall and winter. (*Id*. at 33-34; 127).

As for MBUSI's third counter to Zienni, that he apply for a transfer to another role that might afford more scheduling flexibility, this circuit recognized in *Bailey v. Metro Ambulance Services* that the proffered new role in the organization must be comparable in several respects, including pay, access to overtime, and similar levels of skill and professional reward. *Bailey*, 992 F.3d at 1276-77. MBUSI offers no details regarding the full scope of roles available to Zienni, and there is evidence in the record that when Zienni inquired of a supervisor about job

openings, he was actually told there were none available. (Zienni depo. at Ex. 6). The one job MBUSI identified with specificity in its questioning of Zienni was a potential promotion to team leader (*Id.* at 29, 102), but the record provides no evidence that team leaders have more flexibility to take extra breaks.

Because MBUSI does not meet its burden of showing that it offered a reasonable accommodation, it is not entitled to summary judgment on those grounds.

### 2.  <u>Whether MBUSI demonstrated an undue hardship</u>

In *Groff v. DeJoy*, 600 U.S. 447 (2023), the Supreme Court clarified that the statutory test of "undue hardship" requires a showing by the employer that "a burden is substantial in the overall context of an employer's business." *Id*. at 468. That showing typically consists of evidence that the proposed accommodation "would result in substantial increased costs in relation to the conduct of its particular business." *Id*. at 470. *Groff* explicitly discarded the dicta in *TransWorld Airlines Inc. Hardison*, 432 U.S. 63 (1977) that the undue hardship standard could be met with an employer's showing that it would sustain more than a *de minimis* cost in providing a religious accommodation. *Id*. at 84 n.15.

In its summary judgment briefing, MBUSI conspicuously did not cite to any testimonial evidence in the record, nor did it offer a declaration from any source within the company. Instead, MBUSI asserted without support that a departure

from the line by a team member for the fifteen minute length of Zienni's prayer break *could* lead to a team leader filling in, which, MBUSI insists could lead to ripple consequences in terms of a leader's ability to perform supervisory or remedial tasks, which in turn could weaken productivity and impact performance. (Defendant's SJ Brief at 26-27).

An employer would have comprehensive knowledge of the fine points of its own operations and its counsel's inability to substantiate argument with *any* empirical testimony speaks volumes. If a conclusory assertion of hardship were enough to defeat an accommodation claim, the religious discrimination clause would be stripped of any force:[4] in other words, precisely the state of play in some jurisdictions prior to *Groff*, when, as Justice Alito's opinion observed, " a bevy of religious organizations [have] told this Court that the *de minimis* test has blessed the denial of even minor accommodations in many cases, making it harder for minority faiths to enter the job market." *Id.* at 465. As Zienni observed in his summary judgment briefing, "the abstract idea of inconvenience sans..impact does not survive *Groff*'s jettisoning of the de minimis rule." (Plaintiff's SJ Brief at 21).

Furthermore, MBUSI's narrative is contradicted by parts of the record. Zienni denied in deposition that his team leader was the primary fill-in on the line

---

[4] If the religious clause in Title VII were simply meant to defeat a discriminatory intent, neutral words without a factual foundation might well be enough. But the presence of an undue hardship provision distinguishes Title VII's religious protections from its protections for race and gender.

during his prayer breaks, undercutting part of MBUSI's rationale that an accommodation would have interfered with the team leader's role. (Zienni depo. at 74-75). Group Leader Davis testified that the company permits breaks for non-religious purposes like medical accommodations, which suggests that MBUSI has experience managing temporary gaps in the production line. (Davis depo. at 103-04). Zienni testified that his team leader authorized his prayer breaks, which it is unlikely his leader would have done if they posed a continuing disruption. (Zienni depo. at 73-74). Davis and Olive both conceded that they heard no reports of operating delays on Ziennis' line, and Olive admits the subject of operational disruption or lost costs never came up in the context of the discussions in the HR departments about Zienni's accommodation. (Davis depo. at 109:13-20; Olive depo. at 57, 60). Again, leadership figures within the company who would have been deeply familiar with the operations of a production line, while rejecting Zienni's accommodation, appear to have put no stock in any analysis of its operational costs, financial or logistical: that undercuts the idea that they exist.

Given the absence of evidence that MBUSI authorities considered whether Zienni's prayer breaks posed an undue hardship, there is the inference that the opposition to his accommodation may have been reflective unwillingness to accommodate a religious practice. Indeed, Olive expressed in deposition that he believed religious rights pale in comparison to disability rights, when in fact the

statutory structure of Title VII's accommodations language mirrors its ADA counterpart. (Olive depo. at 44-45). *See* 42 U.S.C.A. § 12112(b)(5)(A) (disability discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity."). *Groff* explicitly rejects versions of the undue hardship defense that amount to thinly veiled resistance to "the very notion of accommodating religious practice." *Groff*, 600 U.S. at 472.

MBUSI falls well short of presenting evidence that Zienni's requested accommodation would have amounted to an undue hardship. As a result, Zenni's discrimination claim should proceed to a jury trial.

## CONCLUSION

The district court erred in its construction of the adverse action standard in Muldrow and summary judgment should be reversed. This Court should advance to the final stage of the Title VII religious analysis and reject MBUSI's assertion of an affirmative defense of undue hardship and remand Zienni's discrimination claim for a trial on the merits.

Submitted the 12th day of February, 2025.

/s/Artur Davis
Artur Davis

**HKM Employment Attorneys LLP**
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
(205-881-0935)
adavis@hkm.com

**Counsel for Appellant**

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on February 12, 2025, Appellant's

Opening Brief was filed with this Court using the CM/ECF system, which will

automatically send email notification of this filing to Defendants'/Appellees'

counsel of record:

> Michael Lucas
> Joseph Barnello
> **Burr & Forman LLP**
> 420 N. 20th St.
> Suite 3400
> Birmingham, AL 35203
> Tel: 205-251-3000
> mlucas@burr.com
> jbarnello@burr.com

> **Counsels for Appellee**

> **HKM EMPLOYMENT ATTORNEYS LLP**

> s/ *Artur Davis*
> Artur Davis
> adavis@hkm.com
> 2024 3rd Ave. N, Suite 212
> Birmingham, AL 35203
> Telephone: 205-881-0935

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court pursuant to 11th Cir. R. 32-3 and FRAP 32(a)(5)(A). This brief also complies with the limitations of FRAP 32(a)(7)(B)(1), in that excluding the parts of the document exempted by FRAP 32(f), this brief contains less than 30 pages.

Submitted the 12th day of February, 2025.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com